J-S45016-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: J.C.F., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: Y.F., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 519 EDA 2017 |

Appeal from the Order Entered January 10, 2017
In the Court of Common Pleas of Philadelphia County
Family Court at No(s):  CP-51-AP-0001268-2016
CP-51-DP-0000085-2015

| | | |
|---|---|---|
| IN THE INTEREST OF: J.C.F., III, A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: Y.F., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 520 EDA 2017 |

Appeal from the Order Entered January 10, 2017
In the Court of Common Pleas of Philadelphia County
Family Court at No(s):  CP-51-AP-0001267-2016
CP-51-DP-0000084-2015

BEFORE:   GANTMAN, P.J., PANELLA, J., and STRASSBURGER[*], J.

MEMORANDUM BY PANELLA, J.                    **FILED MAY 25, 2018**

Y.F. ("Mother") appeals from the January 10, 2017 decrees involuntarily

terminating her parental rights and the orders changing the placement goals

from reunification to adoption with respect to her sons, J.C.F., born in May

_____

[*] Retired Senior Judge assigned to the Superior Court.

2004, and J.C.F., III, born in November 2002 (collectively, "Children").[1] We affirm.[2]

We summarize the relevant facts and procedural history as follows. The Philadelphia Department of Human Services ("DHS") received two separate reports about this family in 2014, alleging that Mother was neglecting the Children's educational and hygiene needs, and she was not providing them food or appropriate supervision. The Children were removed from Mother in December 2014, after Mother had been missing for three days, and the police found her at home asleep, having urinated on herself, and with difficulty answering questions.

The Children were adjudicated dependent on January 28, 2015, and their permanency goal was reunification. Mother was required to satisfy the following Single Case Plan ("SCP") objectives established by the Community Umbrella Agency ("CUA"): participate in mental health treatment through Warren E. Smith ("WES"); participate in parenting services through WES; participate in visitation with the Children, per court order; participate in telephone contact with the Children at the discretion of the Children's therapist; attend the Clinical Evaluation Unit ("CEU") for an assessment and

---

[1] The Children's natural father is deceased.

[2] The Child Advocate has filed an appellee brief in support of the subject decrees and orders.

random drug screenings, per court order; and meet with a life skills coach to explore housing resources.

At the outset of the dependency cases, by orders dated January 21, 2015, the trial court appointed the Support Center for Child Advocates as counsel and guardian *ad litem* ("GAL") for the Children "pursuant to 42 Pa.C.S.A. § 6311 [Guardian ad litem for child in court proceedings], 42 Pa.C.S.A. § 6337 [Right to counsel] and/or 42 Pa.C.S.A. § 5983(a) [Designation of persons to act on behalf of children], to represent said minor's interests in connection with criminal and civil proceedings related to abuse, neglect, dependency, termination of parental rights, adoption and/or custody." Order, 1/21/15.

On December 22, 2016, DHS filed petitions for the involuntary termination of Mother's parental rights pursuant to 23 Pa.C.S. § 2511(a)(1), (2), (5), (8), and (b) and petitions for a goal change to adoption. The trial court held a combined hearing on the petitions on January 10, 2017. The Children, who were then fourteen and twelve years old, respectively, were represented by Martha Little, Esquire ("Child Advocate"), from the Support Center for Child Advocates.[3]

_____

[3] This Court has recently held that we will address *sua sponte* the failure of an orphans' court to appoint counsel pursuant to 23 Pa.C.S. § 2313(a). **See In re K.J.H.**, 180 A.3d 411, 413-414 (Pa. Super. 2018). Our Supreme Court, in **In re Adoption of L.B.M.**, 161 A.3d 172 (Pa. 2017) (plurality), held that § 2313(a) requires that counsel be appointed to represent the legal interests of

DHS presented the testimony of Monaque Riddick, the CUA case manager for this family from the time of the Children's adjudication through the subject proceedings, and the Child Advocate cross-examined her. Ms. Riddick testified that the Children, who were placed together in their present pre-adoptive foster home in October 2015, wish to be adopted. DHS also presented the testimony of Tina Roberts, the CUA aide for the family who supervised Mother's visits with the Children since August 2016. Mother testified on her own behalf.

---

any child involved in a contested involuntary termination proceeding. The Court defined a child's legal interest as synonymous with his or her preferred outcome. With respect to this Court's holding in *In re K.M.*, 53 A.3d 781 (Pa. Super. 2012), that a GAL who is an attorney may act as counsel pursuant to § 2313(a) so long as the dual roles do not create a conflict between the child's best interest and legal interest, the *L.B.M.* Court did not overrule it.

Here, the trial court appointed the Support Center for Child Advocates to represent the Children as their counsel and GAL in dependency and termination of parental rights matters, among others. The court did not issue separate orders of appointment for the Children in the termination matters. To the extent that the Child Advocate did not clarify what roles she served for the Children during the termination hearing, this is of no consequence insofar as our review of the record, discussed below, reveals that there is no conflict between the Children's legal and best interests. Our review of the record, also discussed later, reveals there is no conflict between the Children's legal and best interests. Therefore, we do not remand this matter. *Cf*. *In re T.M.L.M.*, ____ A.3d ____, 2018 WL 1771194 (Pa. Super., filed April 13, 2018) (remand for further proceedings when six-year-old child's preference was equivocal and the attorney neglected to interview the child to determine whether legal and best interest were in conflict).

By decrees and orders dated and entered on January 10, 2017, the trial court granted the petitions for the involuntary termination of Mother's parental rights and changed the Children's permanency goals to adoption. Mother timely filed notices of appeal and concise statements of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b), which this Court consolidated *sua sponte*. Mother then filed, with respect to both appeals, a petition to file a supplemental concise statement of errors complained of on appeal wherein she asserted one additional error by the trial court.[4]

Mother presents the following issues for our review:

1. Did the trial court commit an error of law and abuse of discretion when it denied [Mother's] request to have a hearing with the children present and subsequently terminated her parental rights and changed her children's goal to adoption without ever consulting with the children?

2. Did the trial court commit an error of law and abuse of discretion when it inappropriately relied on inadmissible hearsay evidence, including statements purportedly made by the children, to terminate [Mother's] parental rights and change the children's goal to adoption?

3. Did the trial court commit an error of law and abuse of discretion by involuntarily terminating [Mother's] parental rights under 23 Pa.C.S. § 2511(b), where [DHS] failed to prove by clear

---

[4] The record does not include an order disposing of Mother's petition to file a supplemental concise statement. However, in its Rule 1925(a) opinion, the trial court addresses Mother's additional assertion, which Mother raises verbatim in her second issue in the statement of questions involved in her brief, *infra*. The Child Advocate and DHS address Mother's additional assertion in their briefs to this Court. As such, we conclude that the parties were not prejudiced by Mother filing the supplemental concise statement, and we will review Mother's claim.

and convincing evidence [that] termination would best serve the emotional needs and welfare of the children?

4. Did the trial court commit an error of law and abuse of discretion by changing the children's goal to adoption, where DHS failed to prove by clear and convincing evidence that adoption is in the children's best interest?

Mother's Brief, at 3.

We review Mother's issues regarding the goal change orders and involuntary termination decrees for an abuse of discretion. *See In re R.M.G.*, 997 A.2d 339, 345 (Pa. Super. 2010).

> In order to conclude that the trial court abused its discretion, we must determine that the court's judgment was "manifestly unreasonable," that the court did not apply the law, or that the court's action was "a result of partiality, prejudice, bias or ill will," as shown by the record. We are bound by the trial court's findings of fact that have support in the record. The trial court, not the appellate court, is charged with the responsibilities of evaluating credibility of the witness and resolving any conflicts in the testimony. In carrying out these responsibilities, the trial court is free to believe all, part, or none of the evidence. When the trial court's findings are supported by competent evidence of record, we will affirm, "even if the record could also support an opposite result."

*Id*.

We have stated that

> pursuant to 42 Pa.C.S.A. § 6351(f) of the Juvenile Act, when considering a petition for a goal change for a dependent child, the juvenile court is to consider, *inter alia:* (1) the continuing necessity for and appropriateness of the placement; (2) the extent of compliance with the family service plan; (3) the extent of progress made towards alleviating the circumstances which necessitated the original placement; (4) the appropriateness and feasibility of the current placement goal for the children; (5) a likely date by which the goal for the child might be achieved; (6) the child's safety; and (7) whether the child has been in placement

- 6 -

for at least fifteen of the last twenty-two months. The best interests of the child, and not the interests of the parent, must guide the trial court. As this Court has held, a child's life simply cannot be put on hold in the hope that the parent will summon the ability to handle the responsibilities of parenting.

*In re A.B.*, 19 A.3d 1084, 1088-1089 (Pa. Super. 2011) (citation omitted).

Termination of parental rights is governed by § 2511 of the Adoption

Act, 23 Pa.C.S.A. §§ 2101-2938, which requires a bifurcated analysis.

Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

The relevant provisions of the Adoption Act in this case are as follows.

**(a) General Rule**.—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

. . .

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

. . .

**(b) Other considerations.—**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(2), (b).

Before turning to the merits of Mother's issues on appeal, we note that Mother does not assert in the statement of questions involved in her brief that the trial court abused its discretion by terminating her parental rights pursuant to § 2511(a). *See Krebs v. United Refining Company of Pennsylvania*, 893 A.2d 776, 797 (Pa. Super. 2006) (stating that any issue not set forth in or suggested by an appellate brief's statement of questions involved is deemed waived). Even if she did raise this issue, we would conclude that the court did not abuse its discretion pursuant to § 2511(a)(2).[5] This Court has stated as follows.

In order to terminate parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(2), the following three elements must be met: (1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the

_____

[5] We need only agree with the trial court as to any one subsection of § 2511(a), as well as § 2511(b), in order to affirm an involuntary termination decree. *See In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*).

causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied.

*In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa. Super. 2003) (citation omitted). "The grounds for termination due to parental incapacity that cannot be remedied are not limited to affirmative misconduct. To the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties." *In re A.L.D.*, 797 A.2d 326, 337 (Pa. Super. 2002) (citation omitted).

In this case, the trial court set forth the following factual findings with respect to subsection (a)(2).

> The Children were taken into DHS custody because Mother was unable to provide essential parental care: she was not providing the Children with their educational and hygienic needs; was not providing supervision or, at times, food for the Children; and she was in urgent need of mental health treatment. Mother did not successfully complete all her SCP goals. Mother completed her parenting classes, [al]though CUA still had concerns about her ability to parent. Mother was inconsistent in her mental health treatment and was not engaged in mental health treatment at the time of the termination trial. Mother admitted that she was not consistent with her mental health treatment over the life of the case. Mother also admitted that her psychiatrist is still trying to stabilize her medication regimen in order for her to function. Over the life of the case, Mother made threats to [Ms. Riddick], appeared sleepy and over-medicated in court, and was committed on 201 [50 P.S. § 7201 (Persons who may authorize voluntary treatment)] and 302 [50 P.S. § 7302 (Involuntary emergency examination and treatment authorized by a physician – not to exceed one hundred twenty hours)] commitments. [Ms. Riddick, the CUA case manager,] had safety concerns for the Children and Mother's ability to parent.[6] Mother continues to need to stabilize

_____

[6] Ms. Riddick testified on inquiry by the trial court:

- 9 -

her mental health to function and to provide care for the Children's needs and emotional well-being. Mother lived in inadequate housing throughout most of the case. Mother rents a room in a boarding house. Mother did not verify her address with [Ms. Riddick] or grant permission to assess her house. Mother had supervised visits, but caused the Children distress at almost every visit. Mother was inappropriate when having telephonic contact with the Children. Mother blamed the Children for their placement in foster care, would tell them about her mental health hospitalizations, and even went so far as to tell them that she was pregnant when she really was not. . . .

Trial Court Opinion, 3/27/17, at 10 (citations to record omitted).

The testimonial evidence of Ms. Riddick, the CUA case manager, supports the court's findings. Ms. Riddick testified that Mother was minimally compliant with her SCP objectives. *See* N.T., 1/10/17, at 37-38. Most importantly, she testified that the CEU concluded that Mother has severe mental health issues and would benefit from outpatient treatment at Warren E. Smith. *See id*., at 19. However, Mother did not attend outpatient treatment. *See id*., at 25-26. In addition, Ms. Riddick testified that Mother completed parenting classes, but the certificate of completion from the service provider recommended that she continue with intensive therapy. *See id*., at

_____

Q. Just tell me why do you observe that [Mother is] a safety threat?

A. [S]he's told me that she was going to kill me. She called me and said that her brother . . . was going to kill her and the [C]hildren. And [she told me that her brother] was a[n] Islamic terrorist, and she was, you know, in fear of her life. . . .

N.T., 1/10/17, at 31. *See also id*., at 26.

24-25. She testified that Mother told the Children it was their fault that they were in foster care. *See id*., at 35. Ms. Riddick continued on direct examination:

> [S]ometimes she would even blame me as to the reason why the kids were not home with her stating that I didn't do my job well enough. She had called me one time and asked me not to inform the boys that she was 302'd. And then she called them and told them that she was, which made them extremely upset.
>
> She called them and told them that she was pregnant and expecting a new baby with her new boyfriend. . . .

*Id*., at 35. Ms. Riddick testified that Mother was not pregnant. *Id*.

As such, the trial court's findings, which are supported by the testimonial evidence, reveal that Mother's repeated and continued mental health incapacity and/or refusal to comply with her SCP objectives has caused the Children to be without essential parental care, control or subsistence necessary for their physical or mental well-being. Further, the causes of Mother's incapacity and/or refusal cannot or will not be remedied.

In her first issue on appeal, Mother argues that the trial court erred and abused its discretion by denying her request that the Children testify at the hearing. At the commencement of the hearing and prior to any testimonial evidence, Mother's counsel stated on the record in open court,

> [M]y request is that[,] after we hear all the witnesses today[,] that we get a short date for the boys to come in to testify. I would like them to testify regarding [23 Pa.C.S. §] 2511(b). In addition, there are actually proceedings under two acts before you today.
>
> There's a goal change under the Juvenile Act . . . and termination of parental rights under the Adoption Act. Under the Juvenile Act,

- 11 -

in any permanency hearing held with respect to the child, the [c]ourt shall consult with the child regarding the child's permanency plan in a manner appropriate to the child's age and maturity. . . .

The Pennsylvania Rules of Court pertaining to dependency matters also mandate the appearance of the child at hearings. . . .

N.T., 1/10/17, at 5-6. Mother proffered, "What I would be getting at in the [C]hildren's testimony is the relationship with their Mom, the importance of the relationship with their mom, and whether severing that relationship would be harmful to them and would destroy something in existence that is necessary and beneficial." *Id*., at 6-7.

With respect to the goal changes orders, Mother contends that Pennsylvania Rule of Juvenile Court Procedure 1128[7] requires that dependent

_____

[7] The rule provides in relevant part:

**D.** Order appearance. The court may order any person having the physical custody or control of a child to bring the child to any proceeding.

**Comment:**
In no case is a proceeding to occur in the absence of the child's attorney. The court has discretion whether to proceed if the court finds that a party received proper notice of the hearing and has willfully failed to appear.

Requiring the child's attorney to be present pursuant to paragraph (B)(2) protects the child's interest if the proceeding is conducted in the child's absence. *However, unless good cause is shown*, *a child should appear in court*. It is important that all children, including infants, appear in court so the court can observe the

- 12 -

children be present in all dependency proceedings, and that 42 Pa.C.S.A. §

6351(e)(1)[8] requires that the court consult with the dependent child at goal

change hearings. The trial court agreed on the record in open court that a

---

interaction between the caregiver and child and observe the child's development and health.

Ensuring a child appears in court on a regular basis is critical because the court oversees the child and is to ensure his or her care, protection, safety, and wholesome mental and physical development. However, the court may ask that the child be removed from the courtroom during sensitive testimony.

Pa.R.J.C.P. 1128 (emphasis added).

[8] That subsection provides:

**(e)  *Permanency hearings.***

**(1)** The court shall conduct a permanency hearing for the purpose of determining or reviewing the permanency plan of the child, the date by which the goal of permanency for the child might be achieved and whether placement continues to be best suited to the safety, protection and physical, mental and moral welfare of the child.  In any permanency hearing held with respect to the child, the court shall consult with the child regarding the child's permanency plan, including the child's desired permanency goal, in a manner appropriate to the child's age and maturity. *If the court does not consult personally with the child, the court shall ensure that the views of the child regarding the permanency plan have been ascertained to the fullest extent possible and communicated to the court by the guardian ad litem under section 6311 (relating to guardian ad litem for child in court proceedings) or, as appropriate to the circumstances of the case by the child's counsel, the court-appointed special advocate or other person as designated by the court*.

. . .

42 Pa.C.S.A. § 6351(e)(1) (emphasis added).

child should appear at permanency review hearings pursuant to Pa.R.J.C.P. 1128. *See* N.T., 1/10/17, at 8. Further, pursuant to § 6351(e)(1), the court agreed that a child, based on age and maturity, "could actually give" his or her opinion regarding the placement goal during a permanency review hearing. *Id*. However, in denying the request that the Children testify during the subject proceedings, the court stated to Mother's counsel:

> But all that testimony that you're asking for us to have the [C]hildren come and testify, most of the time, if not all the time[,] it's brought out in DHS's case in chief by the social worker and the case manager because they're the ones that have been working the case for all this time. So, they've been observing the children. They've been talking to the children. And for that matter, even the child advocate because that's the child's attorney. . . .

*Id*., at 8-9.

We agree insofar as Ms. Riddick testified that the Children wish to be adopted. *See id*., at 17. Indeed, both the comment to Pa.R.J.C.P. 1128 and § 6351(e)(1) provide for the child's absence, thereby allowing the juvenile court to exercise its discretion in directing whether a child be present. Thus, we discern no abuse of discretion and/or error of law by the court in denying Mother's request that the Children testify with respect to the goal change proceeding.

With respect to the termination decrees, Mother contends that the court's "consultation with the child is important to complete the needs and welfare analysis required" under § 2511(b). Mother argues that the court abused its discretion in not permitting the Children to testify. During the

hearing, Mother's counsel sought to distinguish this Court's decision in *In re B.L.L.*, 787 A.2d 1007 (Pa. Super. 2001), by stating that she would not be seeking the Children's preference by their testimony. *See* N.T., 1/10/17, at 6-7. The trial court disagreed and found that Mother's counsel was effectively seeking their preference. As such, the court denied her request for the Children's testimony pursuant to *In re B.L.L. See id*., at 7-9.

In *In re B.L.L.*, this Court held that the trial court did not err in refusing to schedule an additional hearing to allow the twelve-year-old female child to testify regarding the involuntary termination of her mother's parental rights. We explained, "[i]n contrast to those which exist in custody or adoption proceedings, there is no statutory requirement nor is there any Pennsylvania appellate decision which permits or requires the testimony or preference by the child to be placed on the record as an integral part of a termination proceeding." 787 A.2d at 1014. In fact, we concluded that *In re Child M.*, 681 A.2d 793 (Pa. Super. 1996), controlled, wherein this Court "specifically refused to create . . . [the] requirement" that an abused or neglected child be forced by his or her natural parent to testify in an involuntary termination proceeding. *Id*., at 1011 (citing *In re Child M.*, 681 A.2d at 798). And we noted that the child's legal interests are protected by representation of counsel in involuntary termination proceedings pursuant to 23 Pa.C.S.A. § 2313(a). *Id*., at 1013-1014.

However, Mother contends on appeal that our Supreme Court's plurality decision in **L.B.M.** overturned **In re B.L.L.**. Specifically, Mother argues that **L.B.M.** "supports the rule that children must be present at termination proceedings. Undoubtedly, the best way to ascertain the child's wishes is for the child to be present to express them." Mother's Brief, at 15.

Contrary to Mother's argument, **L.B.M.** does not require that a child be present to express his or her preference during a contested involuntary termination proceeding. In fact, the **L.B.M.** Court held that § 2313(a) mandates that trial courts appoint counsel for the purpose of representing the child's legal interests, that is, his or her preferred outcome. Indeed, rather than overturning our decision in **In re B.L.L.**, the **L.B.M.** Court expressly noted this Court's decision for recognizing that a child's legal interests are protected by representation of counsel in termination of parental rights cases. **See L.B.M.**, 161 A.3d at 174 n. 3. Therefore, we reject Mother's issue.

In her second issue, Mother argues that the trial court erred and/or abused its discretion by admitting into evidence Ms. Riddick's testimony that the Children wish to be adopted, and that the oldest child, J.C.F., III, told her that he felt he needed to help Mother.[9] **See** N.T., 1/10/17, at 17, 43-44. Ms. Riddick testified as follows.

_____

[9] Mother also asserts that Ms. Riddick's testimony regarding the Children not wanting to visit with Mother in early 2016, described below, is inadmissible hearsay. Because Mother's counsel did not object to this testimony, **see** N.T.,

During the visit, [J.C.F., III,] would state [to] me that he felt that he needed to help his Mom. If he was there with her, maybe, you know, she would be more compliant with her mental health treatment. That he was the one [who] potentially could save her. And that he felt hopeless because he wasn't around to help her out.

*Id*., at 43-44. Nevertheless, Ms. Riddick testified that the Children wish to be adopted. *See id*., at 17. Mother argues that the testimony was inadmissible hearsay and prejudicial because the court relied upon it in ruling on the subject petitions. We disagree.

When we review a trial court ruling on admission of evidence, we must acknowledge that decisions on admissibility are within the sound discretion of the trial court and will not be overturned absent an abuse of discretion or misapplication of law. In addition, for a ruling on evidence to constitute reversible error, it must have been harmful or prejudicial to the complaining party.

*Phillips v. Lock*, 86 A.3d 906, 920 (Pa. Super. 2014) (citation omitted).

Pennsylvania Rule of Evidence 801 defines "hearsay" as a statement that "(1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." Pa.R.E. 801(c).

In its Rule 1925(a) opinion, the trial court reasoned that the testimony was properly admitted as an exception to the rule against hearsay, namely,

---

1/10/17, at 36-37, the claim is waived, *see*, *e.g.*, *Harman ex rel. Harman v. Borah*, 756 A.2d 1116, 1124 (Pa. 2000) ("[I]n order to preserve an issue for review, litigants must make timely and specific objections during trial….").

Pa.R.E. 803(3),[10] as statements of the Children's then-existing state of mind or emotional condition. The court found that the Children's statements testified to by Ms. Riddick "were made in a natural manner and not under suspicious circumstances." Trial Court Opinion, 3/27/17, at 19. Upon careful review of the relevant law as applied to the subject testimony, we discern no abuse of discretion by the court. *See Commonwealth v. Collins*, 703 A.2d 418, 425 (Pa. 1997) ("Where the declarant's out-of-court statements demonstrate his or her state of mind, are made in a natural manner, and are material and relevant, this Court has held that the statements may be admitted"). Mother's second issue fails.

In her third issue, Mother argues that, because DHS did not present reliable evidence of the Children's wishes, and the trial court did not allow the Children to testify regarding their wishes, the court did not adequately consider the Children's needs and welfare under § 2511(b). We disagree.

With respect to that subsection, this Court has explained as follows.

Section 2511(b) focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child. As this Court has explained, Section 2511(b) does not explicitly require a bonding analysis and the term 'bond' is not defined in the Adoption Act. Case law, however, provides that analysis of the emotional bond, if any, between parent and child is a factor to be considered as part of

---

[10] "A statement of the declarant's then-existing state of mind (such as motive, intent or plan) or emotional, sensory, or physical condition (such as mental feeling, pain, or bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the validity or terms of the declarant's will."

our analysis. While a parent's emotional bond with his or her child is a major aspect of the subsection 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by the court when determining what is in the best interest of the child.

> [I]n addition to a bond examination, the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent. Additionally, this Court stated that the trial court should consider the importance of continuity of relationships and whether any existing parent-child bond can be severed without detrimental effects on the child.

*In re Adoption of C.D.R.*, 111 A.3d 1212, 1219 (Pa. Super. 2015) (quotation marks and citations omitted; brackets in original).

The trial court found as follows with respect to subsection (b).

Mother and Children do not have a positive and healthy relationship. During visits, Mother would upset the Children with questions she knew would distress them. During telephonic contact, Mother blamed the Children for their placement in foster care, told them about her mental health hospitalizations, and lied to them about being pregnant. Mother created false expectations for the Children by making promises that she knew could not be accomplished. At the same time, both [C]hildren are parentified when it comes to Mother. Both Children expressed the desire to take care of Mother and make sure she takes her medication. The Children believed that Mother would be all right if they were there to take care of her. . . . The relationship of Mother to Children is similar to that of an aunt or older sister, rather than a parent. The trial court heard testimony that the Children are more worried about Mother than Mother is about Children. Children are twelve and fourteen years of age and want to be adopted by the foster parent. The Children would not suffer irreparable harm if Mother's parental rights were terminated. It is in the Children's best interest to be adopted by the foster parent who has cared for them for at least the last fourteen months. . . . Consequently, the trial court did not abuse its discretion when it found, by clear and convincing evidence, that there was no parental bond and that

termination of Mother's parental rights would not destroy an existing beneficial relationship.

Trial Court Opinion, 3/27/17, at 15-16 (citations to record omitted).

The testimony of Ms. Riddick and Tina Roberts, the CUA case aide who supervised Mother's visits with the Children, supports the court's findings. Their testimony reveals that Mother had supervised visits every Thursday from 4:00 p.m. to 6:00 p.m. *See* N.T., 1/10/17, at 35-36. However, since August of 2016, Mother had only six visits with the Children. *See id.*, at 61. Ms. Riddick explained on cross-examination:

> The visits were [at] the boys' discretion. So, we went through a period where neither [child] wanted to visit . . . starting early back in 2016, based off of [Mother informing them of her] pregnancy. . . . The boys just felt like they didn't want to be bothered. [Mother] would tell them things like, "I'm going to give you this. I'm going to do" -- you know, a lot of promises.
>
> And then . . . when they got to the visit, she wouldn't follow up with it.  So, the boys did not want to visit. However, recently, she's given them . . . money -- more materialistic items to try to get them to come.

*Id.*, at 36-37.

Ms. Riddick and Ms. Roberts testified that the Children would not suffer irreparable harm if Mother's parental rights were terminated. *See id.*, at 42, 64. Indeed, they testified that the Children's bond with Mother is not healthy. *See id.*, at 42, 65. Ms. Roberts explained that they are "trying to be adults instead of trying to be children to Mom." *Id.*, at 65. Ms. Riddick and Ms. Roberts described the Children as "parentified" in that they feel the need to help Mother be compliant with her mental health treatment. *Id.*, at 43-44, 65.

Further, Ms. Riddick testified that the Children "have a very good relationship with their current foster parent." *Id*., at 40. In fact, she testified that the Children would suffer irreparable harm if removed from their foster mother, who is a pre-adoptive resource. *See id*., at 17, 39. Thus, the testimonial evidence supports the court's conclusion that terminating Mother's parental rights will serve the Children's developmental, physical, and emotional needs and welfare pursuant to subsection (b). Mother's third claim fails.

Lastly, Mother argues that, because the court did not consult with the Children pursuant to § 6351(e)(1), it did not adequately consider the Children's best interests. Therefore, Mother argues that the court erred and abused its discretion in changing the Children's goal to adoption. Based on our disposition of Mother's second issue on appeal, we reject this claim. Further, we conclude that the foregoing testimonial evidence supports the goal change orders. The evidence demonstrates that the Children had been dependent for nearly two years at the time of the hearing, and Mother's incapacity and neglect continued to cause them to be without essential parental care necessary for their physical and mental well-being. And they desired adoption. Thus, we discern no abuse of discretion.

Accordingly, we affirm the decrees involuntarily terminating Mother's parental rights and the goal change orders.

Decrees and orders affirmed.

President Judge Gantman joins the memorandum.

Judge Strassburger files a concurring memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>5/25/18</u>